```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

James Russell

    v.                                      Civil No. 13-cv-398-JL
                                            Opinion No. 2014 DNH 205

Carolyn Colvin, Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

James Russell appeals the Social Security Administration's ("SSA") denial of his applications for a period of disability and disability insurance benefits, and the SSA's partially favorable decision on his application for supplemental security income. An administrative law judge at the SSA ("ALJ") ruled that, due to his severe impairments of ischemic heart disease, degenerative disc disease, depression with anxiety, sleep apnea, and obesity, Russell became disabled as of his 50th birthday, on February 16, 2012. The ALJ thus granted his application for supplemental security income insofar as it sought benefits from that date on. The ALJ also ruled, however, that prior to his 50th birthday (which fell after Russell's date last insured), Russell was not disabled because he retained the ability to perform jobs that exist in significant numbers in the national economy. See 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ accordingly denied Russell's applications for a period of disability and disability insurance benefits. The Appeals Council later denied Russell's

request for review of the ALJ's decision, see id. §§ 404.968(a), 416.1468(a), which became the SSA's final decision on Russell's applications, see id. §§ 404.981, 416.1481. Russell appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Russell has filed a motion to reverse the decision. See L.R. 9.1(b). He argues that the ALJ made several missteps in concluding that he was not disabled before his 50th birthday. Specifically, Russell contends that the ALJ:

- failed to apply the "borderline situation" rule, see 20 C.F.R. §§ 404.1563(b), 416.963(b), when determining the onset date of Russell's disability;

- incorrectly concluded that Russell retained the residual functional capacity ("RFC") to perform sedentary work prior to his 50th birthday, despite the opinions of his physicians that he could stand or walk less than two hours in an eight-hour workday;

- failed to develop the administrative record after being notified that a state agency had concluded that Russell was disabled prior to his 50th birthday; and

- failed to apply Social Security Ruling 83-20, Titles II and XVI: Onset of Disability, 1983 WL 31249 (S.S.A. 1983).

The Commissioner of the SSA maintains that the ALJ committed no error and has filed a motion for an order affirming the decision, to which Russell has filed a response. See L.R. 9.1(e). After careful consideration of the record and the parties' submissions, the court agrees with the Commissioner that the ALJ did not err,

2

and thus grants her motion to affirm (and denies Russell's motion to reverse) the ALJ's decision.

## I. "Borderline situation" rule

When determining whether a claimant is entitled to either disability insurance benefits or supplemental security income, an ALJ performs the familiar five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). At the fifth step, the ALJ must consider whether, in light of the claimant's RFC, age, education, and work experience, he "can make an adjustment to other work"; if not, SSA regulations dictate a finding that the claimant is disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). For purposes of this analysis, a claimant is divided into one of three age categories: (1) "younger person," for those under age 50; (2) "person closely approaching advanced age," for those ages 50-54; or (3) "person of advanced age," for those age 55 and older. Id. §§ 404.1563(c)-(e), 416.963(c)-(e). These categories dictated the outcome in this case: a "younger person" with Russell's RFC and other characteristics is not considered disabled under the SSA regulations, but a "person closely approaching advanced age" with the same characteristics and RFC is. Thus, as already mentioned, the ALJ concluded that

Russell did not become disabled until his 50th birthday, when he entered the latter category.

The SSA regulations, however, direct the ALJ not to "apply the age categories mechanically in a borderline situation." Id. §§ 404.1563(b), 416.963(b). Rather, if the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled," the ALJ must "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." Id. Russell contends that the ALJ failed to carry out this directive when determining the onset date of his disability.

In Russell's view--implicitly, but never expressly, stated in his memoranda--an ALJ's determination that a claimant has become disabled upon his entry into an older age group amounts to a "borderline situation" requiring the ALJ to consider whether the claimant was also disabled up to "a few days to a few months" prior to his birthday. In this case, Russell's interpretation of the rule would have required the ALJ to consider whether the actual onset date of Russell's disability was not, in fact, his 50th birthday, but some date within the six months preceding it.[1]

---

[1] Russell, relying on case law from some courts within this circuit, suggests that the "few days to a few months" referenced in §§ 404.1563(b) and 416.963(b) encompasses a six-month period.

4

That interpretation--which is unsupported by any case law cited by Russell, or found by this court--is incorrect.

The "borderline situation" rule does not operate to push forward in time the onset date of disability for a claimant who has been found to be disabled upon his attainment of an older age category. Rather, as the text of the rule suggests, it operates to give the benefit of the doubt to a claimant who had <u>not</u> yet attained an older age category as of the relevant date for determining his entitlement to benefits, and who would <u>not</u> be found disabled if the ALJ were to apply his actual, younger age category as of that date.

The SSA's internal guidance on when a borderline situation exists makes this explicit. The Hearings, Appeals and Litigation Law Manual, or "HALLEX," an internal SSA procedural manual,

---

<u>See</u>, <u>e.g.</u>, <u>Gallagher v. Astrue</u>, 2009 DNH 048, 15 (Barbadoro, J.) ("Although the courts have varied in their interpretation of in what period of time the borderline range falls, the general consensus is that the borderline range falls somewhere around six months from the older age category." (internal quotation marks and citation omitted)). This court need not explore that issue here, and assumes for present purposes that Russell is correct. <u>But cf.</u> Social Security Administration, Program Operations Manual System (POMS) § DI 25015.005(C)(4)(b)(3) (S.S.A. 2011), <u>available at</u> https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015005 (last visited Sept. 29, 2014) ("Setting definitive criteria for what is meant by a few days to a few months, such as 3 months or 6 months, before attainment of the next higher age category is not appropriate. To do so is to mechanically apply age criteria and would establish additional age categories not found in the regulations.").

explains that the "borderline situation" rule should be applied "whenever the age category changes <u>within a few months after</u> the alleged onset date, the date last insured (or the prescribed period), or the date of the ALJ's decision."  HALLEX § II-5-3-2, 2003 WL 25498826 (S.S.A. 2003) (emphasis added); <u>see also</u> Social Security Administration, Program Operations Manual System (POMS) § DI 25015.005(C)(4)(b)(5) (S.S.A. 2011), <u>available at</u> https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015005 (last visited Sept. 29, 2014) (similar).  So, as another judge of this court has previously held, for a supplemental security income claimant, a "borderline situation" exists where the claimant would attain a higher age category within a few days to a few months of the ALJ's decision, whereas, for a disability insurance benefits claimant, a "borderline situation" exists where the claimant would attain a higher age category within a few days to a few months of the date last insured. Gallagher, 2009 DNH 048, 17 n.4 (citing cases).

As the Commissioner points out, Russell was 47 years old on his date last insured--far more than "a few days or a few months" from reaching the "person closely approaching advanced age" category--and thus did not present a "borderline situation" for purposes of his applications for a period of disability and disability insurance benefits.  <u>See</u>, <u>e.g.</u>, Swan v. Barnhart, No.

6

03-cv-130, 2004 WL 1529270, at *9 (D. Me. Apr. 30, 2004) (ALJ was not required to apply "borderline situation" rule where claimant was over eight months away from fiftieth birthday on relevant date); Barrett v. Apfel, 40 F. Supp. 2d 31, 39-40 (D. Mass. 1999) (claimant's case "simply was not a borderline situation" where he was over nine months away from fifty-fifth birthday on relevant date).  And, on the date of the ALJ's decision, Russell was 50 years old--already eligible for consideration as a "person closely approaching advanced age"--and nearly five years away from reaching the "person of advanced age category."  For purposes of his application for supplemental security income, then, his case likewise did not present a "borderline situation."[2]  See Swan, 2004 WL 1529270 at *9; Barrett, 40 F. Supp. 2d at 39-40.  The ALJ did not err by not applying the rule set forth in §§ 404.1563(b) and 416.963(b).

## II.  ALJ's RFC determination

Russell also asserts that the ALJ, in finding that he was not disabled prior to his 50th birthday, incorrectly concluded that he retained the RFC to perform sedentary work, as defined in

---

[2]As of June 4, 2002, his alleged disability onset date, Russell was 40 years old and nearly ten years away from attaining a higher age category.  So, insofar as that date is relevant to the existence of a "borderline situation," it also does not help Russell here.

20 C.F.R. §§ 404.1567(a) and 416.967(a) (with accommodations that are not relevant here). According to Russell, this conclusion is inconsistent with the opinions of his treating physicians--Drs. Lavery and McCole--that Russell was able to "stand and/or walk . . . less than 2 hours in an 8-hour workday." See Admin. R. at 565, 679. "[E]ven sedentary work," Russell claims, "requires an individual to stand or walk for at least a total of 2 hours per day." Proceeding on this premise, he reasons that the ALJ must have rejected the opinions of Drs. Lavery and McCole in favor of either (1) the ALJ's own lay assessment of the medical evidence, or (2) the opinion of a non-examining doctor that he was capable of walking or standing for "about 6 hours in an 8-hour workday." Id. at 79. In further reliance on this premise, Russell argues that the ALJ's hypothetical question to the vocational expert who testified at the administrative hearing was flawed, as it assumed that Russell had the RFC to perform sedentary work, despite his inability to stand or walk more than two hours per day.

    The premise of Russell's argument is incorrect. Sedentary work does not require standing or walking "at least" two hours per workday, as Russell claims. Rather, as the only sources he cites in support of that premise make clear, sedentary work requires at most two hours of standing or walking. Social Security Ruling ("SSR") 96-9p, Titles II and XVI: Determining

Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than A Full Range of Sedentary Work, 1996 WL 374185, at *3 (S.S.A. 1996) ("Jobs are sedentary if walking and standing are required . . . no more than about 2 hours of an 8-hour workday." (emphasis added)); SSR 83-10, Titles II and XVI: Determining Capability to Do Other Work--The Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5 (S.S.A. 1983) (same).  So the ALJ's conclusion that Russell was able to perform sedentary work is entirely consistent with the opinions of Drs. Lavery and McCole as to Russell's capacity for standing and walking.  Cf. Boehmer v. Barnhart, No. 04-cv-577, 2005 WL 6119884, *13 (E.D. Mo. Sept. 7, 2005) (opinion that claimant could stand/walk only 1 hour per 8-hour day consistent with ALJ's finding that claimant could perform sedentary work); see also, e.g., Suarez v. Astrue, No. 11-cv-756S, 2012 WL 3535763, *3-4 (W.D.N.Y. Aug. 14, 2012) (limitation to standing and walking less than 2 hours in 8-hour day is "consistent with sedentary work"); Thompson v. Astrue, No. 08-cv-4150, 2011 WL 9107, *4-5 (N.D. Cal. Jan. 3, 2011) (similar).

It follows that Russell's accusation that the ALJ jettisoned those opinions in favor of his own lay assessment of the medical evidence, or that of the non-examining state agency physician, is meritless.  The same is true of Russell's contention that the

ALJ's hypothetical question to the vocational expert was in some way flawed.  The court finds no error in the ALJ's RFC ruling.

### III. Development of the record

Russell next argues that the ALJ did not fulfill his duty to develop the record.  As this court has previously discussed, "[b]ecause Social Security proceedings are not adversarial in nature, [an ALJ] has a duty to develop an adequate record from which a reasonable conclusion can be drawn"–-a duty that, while heightened in cases where the claimant is unrepresented, also applies where, as here, the claimant has counsel. Gaudreault v. Astrue, 2012 DNH 108, 13 (quoting Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991)).  Russell points out that, following the administrative hearing before the ALJ, his counsel notified the ALJ that a state agency had approved his application for Aid to the Permanently and Totally Disabled on January 26, 2012, a date three weeks before the date on which, in the ALJ's opinion, Russell had become disabled.  Upon receiving this information, Russell argues, the ALJ was under an obligation to conduct further inquiry.  The court disagrees.

The ALJ's duty to develop the record arises where the ALJ is "alerted by the record to the presence of an issue." Gillis v. Astrue, 2009 DNH 051, 15 (quoting Santiago v. Sec'y of HHS, 944 F.2d 1, 6 (1st Cir. 1991)) (emphasis and internal quotation marks

10

omitted).  The mere fact that another agency has concluded that the claimant was disabled as of a certain date does not suggest that the record before the ALJ is insufficient or incomplete in some way that would trigger the ALJ's duty to seek out additional information.  Cf. Gaudreault, 2012 DNH 108 at 14-15 (ALJ failed to adequately develop record where there was obvious gap in medical records).  And, in any event, for an ALJ's failure to develop the record to constitute reversible error, the claimant must demonstrate that he or she has suffered some prejudice as a result.  Id.  Russell's motion to reverse makes no attempt to explain what additional evidence the ALJ could or should have obtained that would have resulted in a more favorable outcome.  Thus, even accepting the dubious proposition that the ALJ should have done something more after receiving notice of the state agency decision, Russell has demonstrated no prejudice that would warrant remand here.[3]

---

[3]In response to the Commissioner's motion to affirm, under the heading "[f]ailure to develop the record," Russell suggests that the ALJ also erred by not explaining what consideration, if any, he had given to the state agency decision.  By failing to develop this argument in his own motion to reverse, Russell has arguably waived it.  See Lawton v. Astrue, 2012 DNH 126, 14.  And the argument fails in any event.  While ALJs ordinarily should explain the consideration given to disability determinations by other governmental agencies, the failure to do so does not necessitate remand where, as here, the determination consists of "a single-page document" devoid of "any evidence or relevant analysis detailing the agency's rationale for their award." Lawrence v. Astrue, 2011 DNH 098, 25.

## IV.  Social Security Ruling 83-20

Finally, Russell argues that the ALJ failed to apply SSR 83-20, Titles II and XVI: Onset of Disability, 1983 WL 31249 (S.S.A. 1983), in determining the onset date of his disability.  That ruling acknowledges that, "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling."  Id. at *2.  It counsels:

> In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. . . . How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred.

Id. at *2-*3.  Russell asserts that because his heart disease and degenerative disc disease are both "chronic and progressive," the ALJ should have asked a medical advisor to assist in pinning down the precise date on which those impairments became disabling.

Russell is incorrect for exactly the reason advanced by the Commissioner in her motion to affirm: the ALJ's ruling as to the onset of his disability was not based on a finding that Russell's impairments had progressively deteriorated to the point where he could no longer work, such that the exact onset date of Russell's disability was ambiguous and the ALJ had to pinpoint it through

12

educated guesswork.  Instead, the ALJ--largely adopting the opinions of Dr. Lavery, Russell's treating physician--found that Russell's RFC had been more or less static since June 4, 2002. Applying the Medical Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that although Russell's RFC was not disabling for an individual under age 50 with his work experience and education, it was disabling for an individual age 50 or older with those characteristics.[4]  See Part I, supra.  The ALJ's determination that the onset date of Russell's disability was his 50th birthday, then, was not based on ambiguous medical evidence regarding the slow progression of his impairments, and SSR 83-20 had no applicability.  See, e.g., Perkins v. Chater, 107 F.3d 1290, 1295-96 (7th Cir. 1997) (concluding SSR 83-20 was inapplicable where "the ALJ found that the disabilities from which [claimant] suffers were relatively constant" and determined that "[i]t was only when his age reached the level specified in the Medical-Vocational guidelines that he qualified as 'disabled'").

---

[4] Russell does not argue that the ALJ erred in finding that his RFC had not changed between June 4, 2002 and the date of the ALJ's decision, or that the ALJ incorrectly applied the Medical Vocational Guidelines.

## V. Conclusion

For the foregoing reasons, Russell's motion to reverse the ALJ's decision[5] is DENIED, and the Commissioner's motion to affirm it[6] is GRANTED. See 42 U.S.C. § 405(g). The clerk shall enter judgment accordingly and close the case.[7]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: September 29, 2014

cc: Tamara N. Gallagher, Esq.
   Karen B. Fitzmaurice, Esq.
   T. David Plourde, Esq.

---

[5]Document no. 8.

[6]Document no. 9.

[7]Russell's amended motion to reverse (document no. 8) fails to comply with the formatting requirements set forth in Local Rule 5.1(a)--specifically, the requirements that filings "have no less than one (1) inch margins" and "be double spaced except for quoted material." These violations do not appear to have allowed Russell any undue advantage in this case, so the court will not take any remedial action, but counsel are cautioned that the court expects their adherence to L.R. 5.1(a) in the future.